UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RAYMOND GONZALEZ, 99-A-1878,

                              Plaintiff,
                                                                                        DECISION AND ORDER
           -v-                                                              04-CV-6032 CJS

SGT. D. BOROWSKY, et. al.,

                              Defendants.
_____

APPEARANCES

For Plaintiff:           David T. Archer, Esq.
                            Harter Secrest & Emery LLP
                            Twelve Fountain Plaza, Suite 400
                            Buffalo, New York 14202-2293

For Defendants:       Gary Levine, Esq.
                            Office of the New York State
                            Attorney General
                            144 Exchange Boulevard
                            Rochester, NY 14614

INTRODUCTION

     This is an action in which the Plaintiff, a prison inmate, is suing pursuant to 42 U.S.C. § 1983, asserting Eighth Amendment claims involving excessive force and denial of medical care. Now before the Court is Defendants' motion [#33][1] for summary judgment. For the reasons that follow, the application is denied.

---

[1] The motion was originally filed on January 11, 2006, and was deemed re-filed on January 28, 2008. *See*, Order, Docket [#72].

BACKGROUND

Unless otherwise noted, the following are the undisputed facts of this case viewed in the light most favorable to Plaintiff. At all relevant times Plaintiff was a prison inmate in the custody of the New York State Department of Correctional Services ("DOCS"). Plaintiff was HIV positive and was required to take medications designed to prevent him from developing AIDS. Prior to July 30, 2003, Plaintiff was housed at Southport Correctional Facility ("Southport"). During most of his stay at Southport, Plaintiff received HIV medication. In connection with Plaintiff's HIV treatment, medical staff at Southport periodically drew his blood for testing. However, at some time prior to July 2003, Plaintiff formed the belief that someone at Southport had injected him with a contaminated needle, causing him to become ill. Subsequently, Plaintiff refused to have his blood drawn, unless the phlebotomist was willing to demonstrate that the needle to be used was new and still in its wrapping. Medical staff at Southport refused Plaintiff's demand, and discontinued his HIV medication.

On July 30, 2003, Plaintiff was transferred to Attica Correctional Facility ("Attica"). Upon his arrival at Attica, medical staff at Attica were notified of Plaintiff's HIV condition. On July 30, 2003, defendant Barbara Higley, R.N. ("Higley") conducted an intake interview with Plaintiff, at which time Plaintiff requested HIV medication. Plaintiff also indicated that he was willing to have his blood drawn for testing. Higley indicated that she would speak to defendant Stephen Laskowski, M.D. ("Laskowski") about Plaintiff's request. However, Plaintiff was not provided with HIV medication until September 5, 2003. Higley and Laskoswki contend that this delay in providing

Plaintiff's medication was his own fault, because he refused to have his blood drawn, and that such testing was necessary prior to providing the medication. Plaintiff, though, denies that he refused to have his blood drawn at Attica.

On November 1, 2003, Laskowski stopped Plaintiff's HIV medication, after corrections staff discovered a cache of approximately 25 of the pills[2] in Plaintiff's cell. Plaintiff states that the medication was required to be taken with food, and that he had not taken the pills because medical staff had not provided him with food at the proper time. Laskowski did not resume plaintiff's HIV medication until December 23, 2003.

On December 23, 2003, Laskowski prescribed Plaintiff a different type of HIV medication. Plaintiff took the new medication for approximately one week, then stopped because he was experiencing side-effects. Plaintiff asked Laskowski to re-prescribe the original medication, but Laskowski refused to do so. Subsequently, Plaintiff did not receive any HIV medication until February 24, 2004, when Laskowski re-prescribed the original medication.

On April 21, 2004, Plaintiff's HIV medication was again stopped, though it is unclear, from the current record, whether that decision was made by Laskowski or another doctor. In any event, the reason given for discontinuing the medication was that a staff member had observed Plaintiff dumping his pills down a sink on several occasions, though Plaintiff denies doing so. Nevertheless, Plaintiff was not given any HIV medication during the remainder of his stay at Attica, which ended on August 11, 2004, when he was transferred to Elmira Correctional Facility.

---

[2] Defendants maintain that Plaintiff was required to take 24 pills per day, therefore, the cache of pills represents approximately one day's dosage. (Defendants' Statement of Facts ¶ 8).

Additionally, Plaintiff alleges that on August 19, 2003, while being transported from one cell to another at Attica and while he was handcuffed behind his back, defendant Corrections Officers Eric Stoerr ("Stoerr"), James Liberatore ("Liberatore"), Michael Karlinski ("Karlinski") and Norman Rausche ("Rausche") attacked him without provocation.  Specifically he maintains that they threw him to the floor twice, and, both times, punched and kicked him repeatedly.  Plaintiff also alleges that defendant Corrections Sergeant Darryl Borawski ("Borawski") observed the assaults and failed to intervene.  Borawski admits that Stoerr and Liberatore used force to restrain Plaintiff, but maintains that the officers used only minimal force after Plaintiff attempted to pull away from them.  In that regard, Borawski indicates that Plaintiff suffered only two small "red marks" on his shoulder.

Plaintiff, proceeding *pro se*, subsequently commenced the subject action, alleging Eighth Amendment violations with regard to both the alleged denial of medical care and the alleged assault.  Subsequently, Plaintiff obtained some document discovery from Defendants, but conducted no depositions.  On January 11, 2006, Defendants filed the subject motion for summary judgment.  In support of their motion for judgment on the medical claim, Defendants contend that the withholding of Plaintiff's HIV medication was the result of his refusal to have his blood tested and his subsequent refusal to take the medication.  Additionally, they maintain that "the withholding of plaintiff's HIV medication did not threaten [his] life," and that his condition was "not fast degenerating." (Laskowski Aff. ¶ 13)   As for the excessive force claim, Defendants contend that the force used was minimal and appropriate, and that

Plaintiff's version of events is incredible as a matter of law.

Still proceeding *pro se*, Plaintiff filed a response to the summary judgment motion. However, during this same period the Court received various letters and applications from Plaintiff which called into question Plaintiff's mental status. Consequently, the Court assigned counsel to represent Plaintiff, and permitted assigned counsel to submit supplemental papers in opposition to the summary judgment motion. Subsequently, Plaintiff's counsel requested permission to conduct additional discovery, including depositions of all defendants, pursuant to Rule 56(f). The Court granted the application.

Plaintiff's counsel completed the requested additional discovery. On January 31, 2008, Defendants re-filed their application for summary judgment. Subsequently, the Court permitted the parties to file supplemental motion papers.

ANALYSIS

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In

moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e).

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles applicable

to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
>
> ***
>
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. See *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. See *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

Plaintiff alleges that Laskowski and Higley violated his Eighth Amendment rights by denying him medical treatment, and the legal standard for such claims is clear:

> In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs. This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.
>
> Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. [T]he Supreme Court [has] explained that the Eighth Amendment's prohibition

> on cruel and unusual punishments encompasses the deliberate failure to treat a prisoner's serious illness or injury resulting in the infliction of unnecessary pain and suffering. Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. Similarly, a prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, a state of mind equivalent to the familiar standard of 'recklessness' as used in criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir.2003) (citations and internal quotations omitted). Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation. *See, Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998)("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). Similarly, negligence constituting medical malpractice, without more, will not establish a constitutional claim. *Id*. (citation omitted).

Plaintiff also alleges that Stoerr, Liberatore, Karlinski, Rausche and Borawski violated his Eighth Amendment right to be free from excessive force. The legal principles applicable to such a claim are similarly well-settled:

> The test of whether use of force in prison constitutes excessive force contrary to the Eighth Amendment is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. The absence of serious injury is relevant to the Eighth Amendment inquiry, but does not end it.
>
> To determine whether defendants acted maliciously or wantonly, a court must examine several factors including: the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made

8

by the defendants to temper the severity of a forceful response.

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (citations and internal quotation marks omitted).

Applying all of the foregoing applicable legal principles, the Court finds that there are triable issues of fact regarding Plaintiff's claims. Consequently, Defendants' application for summary judgment must be denied.

## CONCLUSION

For the foregoing reasons, defendants' summary judgment motion [#33] is denied.

So Ordered.

Dated: Rochester, New York
     October 27, 2008

ENTER:

/s/ Charles J. Siragusa

CHARLES J. SIRAGUSA
United States District Judge